The STATE of Ohio, Appellee,

v.

HAYES, Appellant.

[Cite as *State v. Hayes*, 166 Ohio App.3d 791, 2006-Ohio-2359.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21215.

Decided May 12, 2006.

Mathias H. Heck, Jr., Montgomery County Prosecuting Attorney, and Jill R. Sink, Assistant Prosecuting Attorney, for appellee.

George A. Katchmer, for appellant.

FAIN, Judge.

{¶ 1} Defendant-appellant, Tyrance M. Hayes, appeals from his conviction and sentence, following a bench trial, for having a weapon under disability. Hayes contends that his conviction is both against the manifest weight of the evidence and unsupported by sufficient evidence because the state did not adequately prove that the handgun found in his car was in his possession. Hayes also

contends that his conviction is factually inconsistent with the trial court's verdict of acquittal on the companion charge of carrying a concealed weapon.

{¶ 2} We conclude that testimony concerning the circumstances under which the handgun was found, including its precise location and orientation under Hayes's car seat, constitute a sufficient factual basis for the trial court to conclude, as it did, that the handgun was possessed by Hayes. We also conclude that, as the trial court explained on the record, there is no factual inconsistency in its verdict, because the trial court based its acquittal of the companion charge of carrying a concealed weapon upon its conclusion that the state had failed to prove, beyond a reasonable doubt, the element of concealment. Furthermore, even if Hayes's conviction of having a weapon under disability were factually inconsistent with his acquittal of carrying a concealed weapon, that would not afford a basis for reversal. Accordingly, the judgment of the trial court is affirmed.

I

{¶ 3} In the early afternoon, in late June 2004, Dayton police officers were canvassing an area looking for suspects in a reported robbery. Hayes was driving a pickup truck in an alley in the area. There were three passengers, one in the front seat and two in the back seat. When the truck was stopped as a result of the actions of two different police vehicles, one a marked cruiser and the other unmarked, the passenger in the front seat got out and ran away. He was eventually captured with a gun in his possession.

{¶ 4} Meanwhile, police officer John J. Beall removed Hayes from the truck. Officer Michael Baker, who went after the fleeing passenger, had earlier seen Hayes bend down "like he was stuffing something under the seat." Upon his return to the truck, Baker and another officer removed the remaining two passengers from the back of the truck, and Baker secured one of these passengers in his cruiser. Upon returning to the truck after having secured the passenger, Baker saw a handgun under the driver's seat.

{¶ 5} Hayes was arrested and charged by indictment with one count of having a weapon under a disability and one count of carrying a concealed weapon. Following a bench trial, Hayes was acquitted of carrying a concealed weapon, but convicted of having a weapon under a disability. He was sentenced accordingly.

{¶ 6} From his conviction and sentence, Hayes appeals.

II

{¶ 7} Hayes's first assignment of error is as follows:

{¶ 8} "The appellant's conviction is not supported by sufficient evidence and is against the manifest weight of the evidence."

{¶ 9} A conviction for having a weapon under disability, in violation of R.C. 2923.13, requires a finding that the offender "acquire[d], ha[d], carr[ied], or use[d] any firearm or dangerous ordnance" while under certain defined disabilities. In this assignment of error, Hayes contends that the evidence in the record does not permit a finding, beyond a reasonable doubt, that the handgun found under his seat was "had" or carried, i.e., possessed by him.

{¶ 10} Baker testified that he found the gun, a Beretta, leaning against the transmission hump separating the driver's side of the truck floor from the passenger's side. The barrel of the gun was underneath the seat; "the handle was upwards. It was leaning against the hump."

{¶ 11} The trial court, in its questioning of Baker, refined the placement of the gun as follows:

{¶ 12} "The court: You've described, if you have the weapon there, and you want to use the side of the witness stand, say that's the hump there and you're over this way where the Court is looking into the side of the truck.

{¶ 13} "The witness: This is the transmission hump right here?

{¶ 14} "The court: Yeah.

{¶ 15} "The witness: This is the gun. It's laying like this.

{¶ 16} "The court: Now, this being a bench seat, what I'm trying to get is you could see the handle sticking up, but the barrel part you could not see, is that—

{¶ 17} "The witness: That's correct.

{¶ 18} "The court: And was it just laying against this hump, or was any part of it under the seat?

{¶ 19} "The witness: I would say the seat would be right here. I could see the back of the handle of the gun.

{¶ 20} "The court: So you're saying part of the barrel was under the seat.

{¶ 21} "The witness: Yes. I would say three-fourths of this gun was underneath the seat. The seat was right here, and when I came out, because those doors open really wide, and when I came around the corner I looked down and saw this much—the back of the gun.

{¶ 22} "The court: And the way you're describing it or holding it at this point is that the barrel of the gun it was partially under the seat pointed towards the rear.

{¶ 23} "The witness: Towards the rear, yes, sir.

{¶ 24} "The court: And not towards the front.

{¶ 25} "The witness: That is correct."

{¶ 26} When police first questioned Hayes about the gun recovered from under his seat, he claimed that it belonged to his front-seat passenger. When it was pointed out to him that a gun was recovered from the front-seat passenger, Hayes had no response.

{¶ 27} At trial, Hayes's attorney theorized that the gun recovered from under Hayes's seat had belonged to one of the back-seat passengers, who had put it there when the truck was stopped, after Hayes was removed from the front seat.

{¶ 28} There was undisputed testimony that the front seat of the truck was a bench seat going all the way across the width of the cab. In other words, there was no break in the middle through which one of the back-seat passengers could have reached to place a handgun underneath the driver's front seat, with only one-quarter of the length of the weapon extending from the forward edge of the seat. Three of the police officers who were at the scene testified. Although each one may have had one or more periods of time when their attention was focused elsewhere, none of them noticed any movement by the back-seat passengers before they were removed from the truck. Under these circumstances, the trial court could conclude that in order to have placed the Beretta under the driver's seat in the place where it was found, one of the back-seat passengers would have had to have climbed all the way over onto the front seat and then back, which would have been noticed.

{¶ 29} Hayes's trial counsel argued that one of the back-seat passengers could have kicked the Beretta underneath the front seat into the position in which it was found. The trial court, in rejecting this theory, gave a compelling reason for its conclusion:

{¶ 30} "There's speculation that somebody could have kicked the weapon underneath. Well, if somebody would have done that, it would not have ended up in the position it did like this with the handle up and the barrel pointing at the back. You couldn't kick it into that position in the Court's view."

{¶ 31} Obviously, we were not in the courtroom when the witness, Baker, demonstrated how the Beretta was oriented under the passenger seat, or later when the trial court evidently also physically demonstrated how the Beretta was oriented ("like this with the handle up"), but we conclude from the transcript of Baker's testimony and the context that the Beretta was found with its handle lying up against the rise of the transmission hump, so that the handle was not lying flat on the floor, but was rising upward at an angle caused by its lying against the transmission hump. We agree with the trial court that it is not reasonable to suppose that the gun could have wound up in this position if it had

been kicked underneath the front seat from the floor behind the front seat. Although the gun might have slid forward to a position, handle-first, extending a little beyond the edge of the front seat as a result of being shoved, or kicked, by the end of the barrel from behind the seat, it is difficult to see how it could have wound up with the handle propped up, leaning against the transmission hump.

{¶ 32} We conclude that the evidence is sufficient to permit a reasonable finder of fact to conclude, beyond a reasonable doubt, that Hayes placed the gun in the position in which it was found. Nor is this conclusion against the manifest weight of the evidence. Hayes's first assignment of error is overruled.

### III

{¶ 33} Hayes's second assignment of error is as follows:

{¶ 34} "The appellant's conviction for having weapons while under disability must be reversed since it is inconsistent with his acquittal for carrying a concealed weapon."

{¶ 35} To begin with, we agree with the state that a conviction on one count of an indictment may not be reversed upon the ground that it is inconsistent with an acquittal on another count. *State v. Brown* (1984), 12 Ohio St.3d 147, 12 OBR 186, 465 N.E.2d 889; *State v. Washington* (1998), 126 Ohio App.3d 264, 710 N.E.2d 307.

{¶ 36} Furthermore, because this was a bench trial, we have the benefit of the trial court's expressed reasoning for its acquittal on the count of carrying a concealed weapon:

{¶ 37} "But in the Court's view on the element of concealing, there is a reasonable doubt that the weapon was in fact concealed as required by the definition, which says it's not concealed if it's readily observable by a person close enough to see it. Since both of these guys could see it standing outside of the vehicle, in the Court's view that's readily observable.

{¶ 38} "So the Court would find the defendant not guilty of having a concealed weapon."

{¶ 39} Hayes argues that he cannot logically have been found (1) to have possessed the weapon for purposes of the count of having a weapon under disability but (2) not to have possessed the weapon for the purposes of the count of carrying a concealed weapon. But this logical analysis ignores the fact that his acquittal by the trial court on the count of carrying a concealed weapon was not based upon any failure of proof on the element of possession, but was based, instead, upon a perceived failure of proof on the element of concealment.

{¶ 40} Hayes's second assignment of error is overruled.

IV

{¶ 41} Both of Hayes's assignments of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

GRADY, P.J., and WOLFF, J., concur.